**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Ramon Mejia and Mario Boeri, individually and on behalf of a class of all similarly situated persons, | ) ) ) | |
| Plaintiffs, | ) ) | No. _____ |
| v. | ) ) | |
| Verizon Management Pension Plan, Verizon Excess Pension Plan, Verizon Executive Life Insurance Plan, Verizon Income Deferral Plan, Verizon Employee Benefits Committee, Verizon Communications, Inc., Aon Corporation, Wells Fargo & Company, FMR LLC, Morgan Stanley Smith Barney LLC, John Does 1–25, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

1.      This is an ERISA class action alleging breaches of fiduciary duties, wrongful denial of benefits, and, among other things, an attempt to aid and abet perjury. The proposed class consists of citizens of foreign countries who are participants in employee-benefit plans sponsored by Verizon Communications Inc. ("Verizon") who earned their benefits while living and working outside the United States. Verizon and its plans' fiduciaries have systematically subjected these people to the reckless, perhaps fraudulent, administration of their retirement benefits and deferred compensation for years, resulting in the loss of their promised and earned retirement income.

2.      Specifically, Defendants here have ignored the tax laws of the United States, wrongfully withheld United States income and other taxes on benefits due to the class, and failed to properly research the relevant tax laws regarding their foreign beneficiaries. When Defendants finally determined these taxes were wrongfully withheld, rather than informing the class members of the problem and advising them to seek reimbursement from the IRS, they instead

1

asked the class members to commit perjury by averring under oath that their Verizon-assigned, internal-employee-identification numbers were, in fact, Social Security numbers.

3.     To redress this unlawful activity, Plaintiffs and the Class seek a variety of remedies, including the benefits wrongfully withheld, repayment by the fiduciaries of plan assets that were wrongfully paid to government entities, and a host of forms of equitable relief to assure that the class is made whole and that these egregious violations never occur again.

## Parties

### Plaintiffs

4.     Plaintiff Ramon Mejia was an employee of Verizon for more than 30 years, retiring in October 2004. Mr. Mejia is a citizen of Panama. During his employment with Verizon, Mr. Mejia worked exclusively in Latin America. Mr. Mejia has never worked or resided in the United States.

5.     Mr. Mejia is a participant in the Verizon Management Pension Plan, the Verizon Excess Pension Plan, Verizon's GTE Executive Retired Life Insurance Plan, and the Verizon Income Deferral Plan.

6.     Plaintiff Mario Boeri was an employee of Verizon for 36 years, retiring from Verizon in November 2003. Mr. Boeri is a citizen of Italy. During his employment with Verizon, Mr. Boeri worked in the Dominican Republic. Mr. Boeri has never worked or resided in the United States.

7.     Mr. Boeri is a participant in the Verizon Management Pension Plan and the Verizon Excess Pension Plan.

**Defendants**

8.    The Verizon Management Pension Plan ("Management Pension Plan") is a tax-qualified defined-benefit plan under IRC § 401(a).

9.    The Verizon Excess Pension Plan ("Excess Pension Plan") provides (1) benefits with respect to compensation that is not taken into account under the Management Pension Plan because it exceeds qualified plan limitations, (2) benefits that would be provided under the Management Pension Plan except that they exceed the qualified plan limitations on pensions, and (3) excess and supplemental benefits from the assets of Verizon or other participating companies available for general business use. On information and belief, the Excess Pension Plan is an "excess benefit plan" under 29 U.S.C. § 1002(36). In the alternative, on information and belief, the Excess Pension Plan is a plan maintained "primarily for the purpose of providing deferred compensation to a select group of management or highly compensated employees" under 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).

10.    The Verizon Executive Life Insurance Plan ("Life Insurance Plan"), which incorporated Verizon's GTE Executive Retired Life Insurance Plan, is a life insurance plan that, at least with regards to some participants, pays annuities prior to the death of the insured.

11.    The Verizon Income Deferral Plan ("Income Deferral Plan") allows certain Verizon employees to defer the payment of compensation in excess of certain IRS limits until a later date.

12.    Collectively, the Management Pension Plan, Excess Pension Plan, Life Insurance Plan, and Income Deferral Plan are referred to herein as the "Plans."

13.    The Verizon Employee Benefits Committee ("VEBC") is the plan administrator of the Management Pension Plan.

14.     Verizon is the sponsor of the Plans. Ultimately, Verizon has the power to appoint and remove plan fiduciaries and is responsible for funding the Management Pension Plan. Verizon has also been represented as the plan administrator of at least the Management Pension Plan in communications and in court proceedings. Verizon is also the plan administrator of the Life Insurance Plan.

15.     Wells Fargo & Company, which acquired Wachovia Bank N.A. and Wachovia Corporation in 2008 (collectively, "Wachovia"), is or was the withholding agent for one or more of the Plans.

16.     Aon Corporation, which acquired Hewitt Associates, Inc., in 2010 (collectively, "Hewitt"), is the administrative and recordkeeping agent for one or more of the Plans. Hewitt has also been referred to as the plan administrator in communications from Plan agents.

17.     FMR LLC d/b/a Fidelity Investments ("Fidelity") is either the plan administrator or the claims administrator with respect to one or more of the Plans.

18.     Morgan Stanley Smith Barney LLC ("Morgan Stanley") is successor-in-interest to Solomon Smith Barney, which was the administrator of the GTE stock-options program (a predecessor Verizon plan) in which Mr. Boeri participated.

19.     John Does 1–25 are unknown Plans, fiduciaries of the Plans, or service providers to the Plans who have withheld or allowed to be withheld United States taxes from Plaintiffs or the other class members, including the individual members of the VEBC, the plan administrator of the Excess Pension Plan, who is described in the Plan merely as "the most senior HR officer of Verizon Communications Inc. or any delegate of such individual," and the plan administrator of the Income Deferral Plan, who is referred to in the Plan's SPD merely as "the most senior

Human Resources officer of the Company, which will generally be the Executive Vice President—Human Resources."

## Jurisdiction

20.     This Court has jurisdiction over the claims asserted in this action pursuant to ERISA § 502(e), 29 U.S.C. §1132(e), and 28 U.S.C. § 1331. To the extent any claims asserted in this action are deemed not to be governed by ERISA, the Court has supplemental jurisdiction under 28 U.S.C. § 1367 and/or diversity jurisdiction under 28 U.S.C. § 1332.

21.     Venue is proper in this district under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) and Sections 1391(b) and (c) of the Judicial Code, 28 U.S.C. § 1391(b) and (c), because the Plans are administered in this district, the breaches of fiduciary duty took place in this district, Defendants may be found in this district, and/or a substantial part of the events or omissions giving rise to the claims herein occurred.

## Controlling Tax Laws and Plan Provisions

22.     Under the Internal Revenue Code ("IRC"), the determination of whether employee benefits payable to a non-resident alien should be subjected to United States taxes turns on whether the benefits are "U.S.-source" or "foreign-source." IRS Publication 515 (Apr. 2008) at 15; *see also* Rev. Proc. 2004-37.

23.     Generally, benefits are U.S.-source if the services performed to earn the benefits were "performed in the United States." IRC § 861(a)(3).

24.     Benefits are foreign-source if the services performed to earn the benefits were performed "without the United States," meaning *outside* the United States. IRC § 862(a)(3).

25.     If benefits are U.S.-source, then they are subject to United States taxes, and the withholding agent is authorized to withhold benefits at 30%, unless the beneficial owner is a

permanent resident of a country with a tax treaty with the United States, in which case the beneficial owner may claim the tax treaty rate by filing a Form W-8Ben certifying his or her permanent residence in a tax-treaty country with the withholding agent. IRC § 8

26.     If benefits are foreign-source, they are not subject to United States taxes. The beneficial owner may be required to file a Form W-8Ben certifying that he or she is "not a U.S. person" and that the income was "not effectively connected with the conduct of a trade or business in the United States" with the withholding agent to avoid United States tax withholding.

27.     The Management Pension Plan does not purport to authorize Defendants to withhold United States taxes that are not due under United States tax law.

28.     The Excess Pension Plan does not purport to authorize Defendants to withhold United States taxes that are not due under United States tax law.

29.     On information and belief, the Life Insurance Plan does not purport to authorize Defendants to withhold United States taxes that are not due under United States tax law.

30.     The SPD for the Income Deferral Plan states that "[t]he Plan's administrator has full authority to withhold any taxes (including employment taxes) *applicable to* amounts deferred from your compensation, credits made to your Savings IDP Account, or payments of your Plan benefit." (Emphasis added).

## Factual Allegations

31.     Throughout its history, Verizon (which was formed in a merger between Bell Atlantic Corp. and GTE in 2000), has operated in foreign nations throughout Latin America. It has employed foreign citizens who have never resided or worked in the United States to work in these foreign nations. As part of their compensation, Verizon promised these foreign employees retirement benefits and deferred compensation. To fulfill those promises, Verizon enrolled these

foreign workers in the some of the same pension and other employee-benefit plans that Verizon offers its United States employees.

32.     But since at least 1998, Verizon and the agents under its direction have bungled the tax treatment of its foreign employees' income and retirement benefits. This mismanagement continues through to the present day, despite several acknowledgments by Verizon that its tax treatment is faulty and that its current and former foreign employees have been wrongly injured by the company's reckless administration of benefits.

33.     For example, in 1998 and 1999, Verizon, by and through its agent Solomon Smith Barney (predecessor to Defendant Morgan Stanley Smith Barney), wrongfully shortchanged foreign employees in its stock-option program. Verizon and/or Solomon Smith Barney represented that it properly withheld United States taxes from the foreign employees' stock options exercises, but no taxes were due or owing on these amounts for foreign employees who worked outside the United States.

34.     Plaintiff Boeri, in particular, exercised options through the stock options program managed by GTE (predecessor to Verizon) during this time, but the above-referenced Defendants withheld United States taxes of approximately $94,202 from the amounts due.

35.     To compound matters, in March 2000, Solomon Smith Barney sent Verizon's foreign employees, including Plaintiff Boeri, an "IRS Notice of Information Discrepancy."

36.     But just a few months later, Verizon sent another letter to the same foreign employees, including Plaintiff Boeri, informing them that the deficiency notice was a "mass mailing" erroneously sent because Salomon Smith Barney "incorrectly reported stock-option exercises you have performed to the U.S. Internal Revenue Service." Verizon further admitted that Solomon Smith Barney incorrectly reported the class members' stock option exercises to the

IRS because "Solomon Smith Barney's system cannot distinguish the difference between your

Global ID number and a U.S. Social Security Number, which is used as a Taxpayer Identification

Number to report stock option exercises of U.S. employees to the U.S. federal tax authorities."

37.     Verizon's July 2000 letter assured the class members that Solomon Smith Barney

was "taking steps to resolve this issue with the U.S. Internal Revenue Service" and stated that

Verizon was assigning them each a new Global ID to "prevent this issue from reoccurring for

stock options you exercise in the future."

38.     Notwithstanding Verizon's promise, Mr. Boeri and, upon information and belief,

the other class members have never received a refund of the taxes withheld from their stock-

option exercises. And Verizon did not prevent its wrongful withholding from "reoccurring" in

the future.

39.     Just a few years later, Plaintiffs Boeri and Mejia retired. In October 2004, Mr.

Mejia retired and began receiving annuity payments from the Management Pension Plan, the

Excess Pension Plan, and the Life Insurance Plan, and variable distributions from the Income

Deferral Plan.

40.     But beginning in 2004, Verizon underpaid Mejia's benefits under all four plans.

For each plan, Defendants stated they were withholding United States taxes, despite the fact that

no taxes were appropriate for any of this foreign-source income or benefits.

41.     Similarly, prior to Plaintiff Boeri's retirement in January 2004, he inquired as to

whether any United States taxes would be withheld from his benefits and Verizon and/or Hewitt

assured him that "if he does not have any US tax obligation, no taxes would be withheld" as long

as any required "form or certification" was "on file before the payment is issued." Based on that

representation, Boeri specifically noted in a cover letter to his Pension Election Confirmation

form that "being myself a foreigner, no tax-withholding should be applied, and this is the reason why I am sending you a duly signed W-8BEN form for your file."

42.     Nevertheless, when Plaintiff Boeri began receiving annuity payments under the Management Pension Plan and lump-sum payments under the Excess Pension Plan, Defendants underpaid Boeri's Excess Pension Plan benefits. On March 1, 2004, Mr. Boeri was paid the first of two lump-sum benefits. But this payment was over $50,000 less than what was promised due to Defendants' incorrect deductions of federal income, Social Security, and Medicare taxes. On August 1, 2004, Mr. Boeri was paid the second lump-sum, which again underpaid benefits due under the Excess Pension Plan because of alleged deductions for the same taxes.

**Plaintiffs' Attempts to Recover the Taxes Wrongfully Withheld from Their Benefits**

43.     Mr. Mejia and Mr. Boeri have made Herculean efforts over the years to recover the amounts that were wrongfully withheld from their employee benefits.

44.     Both have made numerous phone calls and sent numerous letters to Verizon's HR Department, Wachovia (as withholding agent), Fidelity (as administrator), and Hewitt (a/k/a the Verizon Benefits Center) in an attempt to resolve this issue, explaining repeatedly that United States taxes should not have been withheld from their benefits because they are "foreign-source," meaning that the services performed to earn the benefits were performed outside the United States.

45.     For example, on February 28, 2008, Mejia wrote Fidelity to complain of the "erroneous withholding of U.S. Federal Tax" from his benefits under the Income Deferral Plan. He explained that his country of residence was Panama (not "Unknown," has Fidelity had stated on his Form 1042-S) and that he had "executed previously, Form W-8BEN," demonstrating that he was a citizen of Panama and that his benefits were foreign-source. Mejia requested the

"release of the previously withheld taxes" and offered to provide "a copy of the previously submitted W-8BEN."

46.     Fidelity refused to refund Mr. Mejia's benefits in a letter dated March 19, 2008, claiming that, "because Panama does not have a Tax Treaty with the United States, any distribution from your Plan will automatically withhold 30% for Federal Taxation."

47.     Fidelity's explanation demonstrates a misunderstanding of the tax laws because it shows that Fidelity treated Mejia's benefits as U.S.-source—which would require Mejia to be a citizen of a country with a tax treaty with the United States to avoid United States withholding—when they were clearly foreign-source.

48.     On March 25, 2008, Mejia provided Fidelity with an additional Form W-8Ben demonstrating his permanent residence in Panama and explained again that his benefits were "born out of wages earned for services rendered in foreign countries" and "therefore, exempt from backup withholding."

49.     Fidelity persisted in its misunderstanding of the tax laws, rejecting Mejia's request in a letter dated March 26, 2008, on the grounds that, "because Panama does not have a Tax Treaty with the United States, any distribution from your Plan will automatically withhold 30% for Federal taxation *whether you have filed a W-8BEN form or not*." (Emphasis added).

50.     Fidelity also claimed that it merely "provides administrative recordkeeping services for the Plan," which are "provided in accordance with the terms of the Plan document and are based on administrative procedures that have been established at the direction of the Plan Administrator, Verizon Communications."

51.     Mr. Mejia sent another letter to Fidelity on April 17, 2008, explaining again that he is "a citizen of the country of Panama," that during his employment with Verizon he "worked

in the Dominican Republic, and the country of Venezuela, only," that he "never worked in the United States, nor . . . resided in the United States," and that his benefits should be "considered Foreign Source and therefore exempt from all U.S. Income Taxes, according to the Income Source Rule of the Internal Revenue Service." Mr. Mejia implored Fidelity to "review the Internal Revenue Code pertaining to the Income Source Rules, comply with the rules, and discontinue the withholding of U.S. Federal Income Taxes from my Pension payments."

52.     In response, Fidelity asserted in a letter dated April 23, 2008, that "the assets are maintained in a United States retirement account; therefore, they are subject to the tax rules that govern these accounts," and that, "[w]ithout a treaty between Panama and the United Sates to withhold a different tax amount, 30% is a mandatory withholding according to the tax treaties, even when Fidelity has W-8BEN on file."

53.     On May 12, 2008, Mr. Mejia supplied Fidelity with relevant portions of IRS Publication 515, as well as a simplified IRS chart summarizing the rules regarding "Nonresident Aliens—Source of Income," both of which clearly explain that foreign-source income paid to non-resident aliens is not subject to United States taxes.

54.     On May 17, 2008, Mr. Mejia sent the same IRS materials to Wachovia, the withholding agent.

55.     In a letter dated January 8, 2009, Wachovia refused to refund any of the taxes withheld from Mr. Mejia's benefits. Wachovia claimed that it merely "provides ministerial services to Verizon," that it "receive[s] payment instructions directly from Hewitt Associates," and that its sole responsibility is to "issue payments, withhold and remit taxes, and issue tax reports . . . as directed by Hewitt and Verizon." Because Wachovia "properly followed the directions provided" by Hewitt and Verizon, Wachovia asserted, Mr. Mejia's claims "should be

addressed [to] Hewitt Associates and Verizon, as plan administrator and plan sponsor, rather than to us."

## Verizon Admits that U.S. Taxes Were Wrongfully Withheld

56.     On July 24, 2009, Verizon responded to Mr. Mejia's multiple inquiries through a letter from its Manager of Retiree Strategy & Administration, Michael J. Thivierge. Verizon first "apologize[d] for the difficulty" Mr. Mejia had encountered. The letter explained that "[o]riginally, Verizon records had indicated Mr. Mejia had been reported as a non-resident alien, without a W-8Ben Form . . . on file at the Verizon Benefits Center," and that, "[a]s a result U.S. Federal, Social Security and Medicare Taxes were withheld from Mr. Mejia's qualified pension and non qualified deferred compensation benefits, *treating the benefit payments as wages earned in the United States.*" (Emphasis added.)

57.     But since that time, Verizon explained, "tax attorneys in the Verizon Legal Department were asked to provide guidance on this tax question" and Mr. Mejia's "employment service records were again reviewed in detail and Mr. Mejia's Non Resident Alien status was verified, as an employee working exclusively outside the United States," all of which was "properly supported with appropriate documentation on file and provided the framework of our review."

58.     Verizon then admitted that United States taxes should not be withheld from benefits due to non-resident aliens for services performed outside the United States. It offered to refund the amounts withheld from Mr. Mejia's benefits for closed tax years, stating that "Verizon will be reimbursing taxes withheld from Mr. Mejia's qualified pension and non qualified deferred compensation . . . ." Verizon promised that, "Going forward, Mr. Mejia's monthly qualified pension and non-qualified deferred compensation payments will not be taxed."

59.     Mr. Mejia eventually received a partial refund from Verizon of amounts withheld for United States taxes for tax year 2005. Verizon refused to refund the amounts wrongfully withheld for other tax years, arguing that Mr. Mejia would have to recover the money from the IRS himself. Mr. Mejia subsequently recovered some but not all of the amounts withheld from the IRS, but expended substantial time, money, and effort in doing so, for which he was never reimbursed by Defendants.

60.     Plaintiff Boeri was not as fortunate. When he complained of the withholding of United States taxes from his lump-sum payments under the Excess Pension Plan, Verizon and/or Hewitt (a/k/a the Verizon Benefits Center) advised him to file an administrative ERISA claim with the Verizon Claims Review Unit ("VCRU").

61.     The VCRU denied the claim in a letter dated December 9, 2005, on the grounds that the Excess Pension Plan is "a nonqualified pension plan," meaning it is not "'qualified' under the U.S. Internal Revenue Code," and that "[a]s a nonqualified benefit, your Plan benefit is not eligible for exemption from tax withholding." The letter provided no citation to any IRC provision or IRS regulation to substantiate that position. Nevertheless, Boeri tentatively accepted the explanation from his fiduciaries and suspended his attempts to recover his full benefits.

62.     In 2009, however, Boeri again complained about the wrongful withholdings from his benefits to the Verizon pension department in a letter dated September 16, 2009.

63.     The matter was then referred to Hewitt. Internal e-mails between Hewitt and Verizon reveal confusion over how to process the claim. Notably, Boeri was "listed as a US citizen" in Hewitt's records.

64.     The same e-mails demonstrate that Boeri was listed as a U.S. citizen because Hewitt had a "US based address" on file for him, which means that he "would not have hit

[Hewitt's] radar" and Hewitt "would have treated him as a US citizen since we don't have any other means of determining whether or not he is a foreign resident."

65.     Verizon Corporate Benefits personnel also noted that "it appears that his circumstances were identical to Mr. Mejia's. He was not a U.S. citizen and he never worked in the United States."

66.     Based on these facts, Hewitt concluded that at least "24.12%" of Boeri's benefits should have been "exempt from US taxes."

67.     Nevertheless, rather than refund Boeri even a portion of his wrongfully withheld benefits, Verizon's legal counsel became involved and denied Boeri's claim in a letter dated April 5, 2010. The basis for the denial was purely technical, stating that Boeri's "claim was denied" by the VCRU in 2005 and that his 2009 letter "will not be treated as an appeal of the prior denial." The letter concluded that "Verizon is not willing to reimburse Mr. Boeri for the taxes that were withheld" from his benefits, with no analysis of the relevant tax laws.

68.     With regards to Mr. Mejia, although Verizon promised in its letter of July 24, 2009, that "Going forward, Mr. Mejia's monthly qualified pension and non-qualified deferred compensation payments will not be taxed," Mejia's payments under the Income Deferral Plan have continued to be subjected to withholding for United States taxes.

**Verizon Attempts to Suborn Perjury**

69.     In response to Verizon's letter of July 24, 2009, Mejia wrote a letter dated August 25, 2009, thanking Verizon for finally acknowledging that taxes were wrongfully withheld from his benefits and offering a partial refund. The letter expressed concern, however, "regarding other Verizon retirees" in foreign countries who had been impacted in "the same manner as" Mejia.

14

70.     Verizon responded in another letter from Mr. Thivierge, Verizon's Manager of Retiree Strategy & Administration, dated September 4, 2009, stating that "Verizon has dedicated resources to identifying and researching similarly impacted retirees" and that it would "be communicating directly with those impacted retirees."

71.     On November 20, 2009, the Verizon Benefits Center, managed by Hewitt and/or Verizon, communicated directly with the "impacted retirees" by sending a mass mailing to each class member. As with the March 2000 letter regarding the IRS discrepancy notice from Solomon Smith Barney, this letter arose out of problems with the Global ID numbers Verizon assigned to its foreign employees for tax withholding purposes.

72.     The letter stated that the class members' Global ID numbers were flagged during an annual audit because they matched the Social Security numbers "of a deceased individual." The letter then threatened that each class member's "future pension and/or health and welfare benefits will be suspended effective January 1, 2010, until you respond and mail back the enclosed affidavit."

73.     The enclosed "Letter of Affidavit" asked each class member to swear under penalty of perjury that "I was born on [date of birth], with a Social Security number [Verizon-issued Global ID number], and presently reside at," followed by a blank space for the class member's current address.

74.     The Defendants involved in drafting and sending this letter and affidavit knew or should have known that the class members could not truthfully swear that they were born "with a Social Security number" matching their Global ID number because (1) they were born outside the United States, (2) the Global ID numbers were issued by Verizon, and (3) the same problem had occurred at least once before with Solomon Smith Barney.

15

## Class Action Allegations

75.     Plaintiffs seek to represent a class consisting of two subclasses of similarly

situated persons as defined below:

The "Withholding Subclass":

All participants in Verizon-sponsored employee-benefit plans administered in the
United States who are or were non-resident aliens who earned employee benefits
for services performed outside the United States from whom United States
income or other taxes have been or will be wrongfully withheld.

The "Global ID Subclass":

All participants in Verizon-sponsored employee-benefit plans administered in the
United States who are or were non-resident aliens to whom Defendants or their
agents sent correspondence asking them to state that their Global ID numbers (or
other internal-recordkeeping numbers) were actually Social Security numbers.

76.     On information and belief, the members of the Withholding Subclass and the

Global ID Subclass overlap substantially, but that information is solely within Defendants'

knowledge.

77.     Plaintiffs cannot be certain of how many members are in the class because that

information is solely within Defendants' knowledge. But, on information and belief, the class

consists of at least 50, and perhaps thousands, of members.

78.     Verizon is a multi-national corporation with approximately 194,400 employees

providing communications products and services to carriers, businesses, and government

customers in the United States and over 150 other countries around the world. At the time of

Plaintiffs' retirement, Verizon had a strong presence in Latin America as the principal

telecommunications provider in the Dominican Republic, a majority owner of the parent

company of Puerto Rico's principal wireline company, and owner of a 28.5% interest in

Venezuela's largest full-service telecommunications provider. Verizon also owns substantial

interests in telecommunications providers in Italy, Gibraltar, Slovakia, Indonesia, and Micronesia.

79.     On information and belief, Verizon employs/employed thousands of people in these overseas regions, many of whom have been subjected to the same wrongful tax-withholding practices alleged herein. Accordingly, the class is so numerous that joinder of all members is impracticable.

80.     The only individual question affecting members of the class is the precise amount to which each class member is entitled. This question can be answered simply by calculating the amounts wrongfully withheld from each class member's benefits.

81.     Plaintiffs' claims are typical of the claims of the other class members because they are all non-resident aliens who earned employee benefits for services performed outside the United States from which United States taxes have been or will be wrongfully withheld or who were asked to falsely state that their Global ID numbers were, in fact, Social Security numbers.

82.     Plaintiffs will fairly and adequately protect the interests of the class. They have no conflict of interest with the class, and they have retained competent counsel to represent the class.

83.     A class action is appropriate in this case under Rule 23(b)(1) because the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants or adjudications as to individual class members that would affect the interests of other class members not parties to the adjudications.

84.     The attorneys of Susman Heffner & Hurst LLP have extensive experience in ERISA class-action litigation and will fairly and adequately protect the interests of the class.

**Count 1—ERISA § 502(a)(1)(B) Claim for Benefits**
**(Against the Plans)**

85.     ERISA § 502(a)(1)(B) provides that "A civil action may be brought . . . by a

participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to

enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the

terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

86.     None of the Plans at issue here purport to authorize Defendants to withhold

United States taxes from foreign-source benefits due to non-resident aliens in violation of United

States tax law.

87.     Plaintiff Mejia, on behalf of himself and the other class members, seeks the

benefits due "under the terms of" the Plans, which require that United States taxes not be

withheld from foreign-source benefits.

88.     Plaintiff Mejia also seeks to "clarify" his rights and the rights of the other class

members under the Plans by requiring appropriate disclosures to the class members of the

circumstances under which United States taxes will be withheld from their benefits.

**Count 2—ERISA § 502(a)(2) Claim for Breaches of Fiduciary Duty**
**(Against the VEBC and Verizon)**

89.     ERISA § 502(a)(2) states that "[a] civil action may be brought . . . by the

Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109

of this title [ERISA § 409]." 29 U.S.C. § 1132(a)(2).

90.     ERISA § 409(a) states, "[a]ny person who is a fiduciary with respect to a plan

who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this

subchapter shall be personally liable to make good to such plan any losses to the plan resulting

from each such breach, and to restore to such plan any profits of such fiduciary which have been

made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a).

91. The "responsibilities, obligations, or duties" imposed by ERISA require a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; . . .

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

. . . and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter."

29 U.S.C. § 1104(a)(1).

92. The VEBC and Verizon are each a "fiduciary" within the meaning of ERISA § 409(a).

93. The VEBC and Verizon have violated the duty to act "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose" of "providing benefits to participants and their beneficiaries."

94. The VEBC and Verizon have violated the duty to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a

like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

95.     The VEBC and Verizon have violated the duty to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" ERISA.

96.     The VEBC and Verizon are personally liable (1) to "make good" to the Management Pension Plan and the Life Insurance Plan any losses resulting from each such breach and (2) to "restore" to those plans any profits "made through use of assets of the plan by the fiduciary." They are also "subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a).

### Count 3—ERISA § 502(a)(3) Claim for Appropriate Equitable Relief
### (Against All Defendants)

97.     ERISA § 502(a)(3) states, "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . ." 29 U.S.C. § 1132(a)(3).

98.     Defendants' conduct alleged herein constitutes an "act or practice which violates" the "provision[s] of" ERISA, including ERISA's fiduciary duty provisions codified in 29 U.S.C. § 1104.

99.     Defendants are therefore subject to prospective relief to "enjoin" such future acts or practices, as well as "appropriate equitable relief" to redress Defendants' ERISA violations and enforce ERISA.

100.    Defendants' conduct alleged herein constitutes an "act or practice which violates . . . the terms of the plan," because none of the Plans at issue authorize Defendants to wrongfully withhold taxes from Plaintiffs' benefits.

101.    Defendants are therefore subject to prospective relief to "enjoin" such future acts or practices, as well as "other appropriate equitable relief" to redress Defendants' violations of the Plans and enforce the terms of the Plans.

### Count 4—ERISA § 405(a) Claim for Co-Fiduciary Liability
### (Against the VEBC and Verizon)

102.    ERISA § 405(a) states, "[i]n addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan" if "(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach," or "(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach," or "(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. § 1105(a).

103.    Under DOL Interpretive Bulletin, 29 C.F.R. § 2509.75-5FR-10, a fiduciary must take all legal and reasonable steps to prevent or remedy a breach by a co-fiduciary, including taking legal action against the co-fiduciary or informing the DOL or the plan sponsor.

104.    The VEBC and Verizon are liable for each other's fiduciary breaches because (1) each of them participated knowingly in, or knowingly undertook to conceal, the unlawful tax-withholding practices alleged herein with knowledge that those practices constitute a breach of fiduciary duty, or (2) each of their failures to comply with ERISA § 404(a)(1) "enabled" the

21

other to breach their fiduciary duties, or (3) each had knowledge of the other's fiduciary breaches alleged herein and failed to make reasonable efforts under the circumstances to remedy the breach.

### Count 5—Aiding and Abetting Breach of Fiduciary Duty
### (Against All Defendants)

105.    To the extent any Defendant is deemed not to be a "fiduciary" under ERISA, Plaintiffs allege that any such non-fiduciary Defendant is liable for knowingly aiding and abetting the fiduciary breaches of the ERISA-fiduciary defendants.

106.    Under ERISA § 502(a)(3), such non-fiduciaries are subject to "appropriate equitable relief," including restitution of any ill-gotten gains and injunctive relief.

### Count 6—ERISA § 502(a)(1)(A) Claim for Failure to Furnish Plan Documents
### (Against the VEBC and Verizon)

107.    ERISA § 502(c)(1) provides that "[a]ny administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) of this title or section 1021(f), or section 1025(a) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)(1).

108.    Under 29 C.F.R. § 2575.502c-1, the maximum daily penalty was increased to $110 dollars per day.

109. On January 17, 2011, Mr. Mejia requested from the VCRU "all 'documents and instruments governing the plan' within the meaning of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), pertaining to any plan administered by you in which I am a participant . . . ."

110. The VCRU has not responded to Mr. Mejia's request. So Mr. Mejia has been provided none of the statutorily-required documents relating to the Management Pension Plan, the Excess Pension Plan, the Income Deferral Plan, or the Life Insurance Plan.

111. Plaintiffs therefore seek the maximum statutory penalty of $110 per day for each document unlawfully withheld from January 17, 2011, until the VEBC or Verizon produce the requested documents to Mr. Mejia.

### Count 7—Breach of Contract & Tortious Interference/Aiding & Abetting Breach of Contract
### (Against All Defendants)

112. To the extent Plaintiffs' claims against any Defendant are deemed not to be governed by ERISA, Plaintiffs assert that each Defendant had a contractual obligation to Plaintiffs to pay benefits in accordance with the controlling Plan document and according to the controlling United States tax laws.

113. Moreover, each Defendant either tortiously interfered with each other Defendant's obligation to pay benefits correctly or aided and abetted such Defendant's breach of contract.

114. Plaintiffs and the class have been injured by the above breaches of contract, tortious interference, or aiding and abetting of breach of contract and seek as compensation all remedies due to them in law or equity.

**Count 8—Breach of Common Law Fiduciary Duties & Tortious Interference/Aiding &
Abetting Breach of Fiduciary Duty
(Against All Defendants)**

115.    To the extent Plaintiffs' claims against any Defendant are deemed not to be

governed by ERISA, Plaintiffs assert that each Defendant had a common-law fiduciary duty to

Plaintiffs to pay benefits in accordance with the controlling Plan document and according to the

controlling United States tax laws.

116.    Moreover, each Defendant either tortiously interfered with each other Defendant's

fiduciary duty to pay benefits correctly or aided and abetted such Defendant's breach of that

duty.

117.    Plaintiffs and the class have been injured by the above breaches of fiduciary duty,

tortious interference, or aiding and abetting of breach of fiduciary duty and seek as compensation

all remedies due to them in law or equity.

**PRAYER FOR RELIEF**

Plaintiffs on behalf of themselves and the class request that the Court enter the following

relief:

(A)    appointment of an independent, neutral auditor to review Defendants' tax

withholding practices and provide an accounting of Defendants' use of Plan assets relating to

that withholding;

(B)    reimbursement of all legal expenses, costs, or other monies paid out of Plan assets

relating to the wrongful tax withholding and fiduciary breaches alleged herein;

(C)    removal of Defendants as fiduciaries and Court appointment of independent,

neutral parties as new fiduciaries;

24

(D)     an award of statutory penalties of $110 per day pursuant to 29 C.F.R. §

2575.502c-1 for Defendants' failure to produce Plan documents;

(E)     an order requiring Defendants to recover from the IRS any Plan assets wrongfully

withheld for United States taxes and paid to the IRS and/or to make claims on the class

members' behalf for the reimbursement of such amounts wrongfully paid as taxes; or, in the

alternative, an order requiring Defendants to notify the class members of the procedures by

which they might be able to obtain redress, including but not limited to the IRS refund

procedures;

(F)     reimbursement of all expenses incurred by class members in their attempts to

recover wrongfully withheld taxes from the IRS or Defendants;

(G)     restitution for any losses incurred by the class members;

(H)     compensation for all losses incurred by the class members, including the equitable

remedy of surcharge;

(I)     an order requiring Defendants to make remedial disclosures to class members

regarding the proper taxation of their benefits, the wrongful nature of the tax withholdings

alleged herein, the wrongful nature of Defendants' prior communications asking class members

to swear under penalty of perjury that their global ID numbers were in fact Social Security

numbers, and any other relevant disclosures;

(J)     payment of the full benefits to which the class members are entitled, without

withholding for United States taxes;

(K)     reimbursement of any taxes wrongfully withheld from class members;

(L)     payment of interest on any reimbursement or payment of benefits (both pre-claim

and pre-judgment);

(M)     an award to Plaintiffs and the class members of their expenses, costs, expert

witness fees, and attorney fees;

(N)     an injunction preventing Defendants from engaging in the wrongful withholding

practices described herein; and

(O)     such other and further relief, including "remedial relief" authorized by ERISA §

409(a), as the Court deems appropriate.

Plaintiffs demand a trial by jury on all claims where a jury trial is available.


_____
/s/

Matthew T. Heffner
Glenn L. Hara
Susman Heffner & Hurst LLP
Two First National Plaza, Suite 600
Chicago, Illinois 60603
(312) 346-3466