IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAMON MEJIA and MARIO BOERI, Individually, and on Behalf of a Class of All Similarly Situated Persons, | |
| Plaintiffs, | |
| v. | Case No. 11 C 3949 |
| VERIZON MANAGEMENT PENSION PLAN; VERIZON EXCESS PENSION PLAN; VERIZON EXECUTIVE LIFE INSURANCE PLAN; VERIZON INCOME DEFERRAL PLAN; VERIZON EMPLOYEE BENEFITS COMMITTEE; VERIZON COMMUNICATIONS, INC.; AON CORPORATION; WELLS FARGO & COMPANY; FMR LLC; MORGAN STANLEY SMITH BARNEY LLC; and JOHN DOES 1-25, | Hon. Harry D. Leinenweber |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Aon Corporation's (hereinafter, "Aon") Motion to Dismiss and a Combined Motion to Dismiss by all other Defendants. For the following reason, the Motions are granted in part and denied in part.

I. BACKGROUND

As Benjamin Franklin once famously wrote, nothing in this world can be said to be certain, except death and taxes. This case deals with the latter and what recourse someone has when a

retirement plan gives unto Caesar more than his fair share. The answer, unfortunately for Plaintiffs, is precious little.

Plaintiff Ramon Mejia ("Mejia") is a citizen of Panama who worked in Latin America for Verizon Communications Inc. ("Verizon") for thirty (30) years. Plaintiff Mario Boeri ("Boeri") was a Verizon employee for thirty-six (36) years. He is a citizen of Italy and worked in the Dominican Republic. Except where indicated, the following is Plaintiffs' version of events.

Plaintiff Mejia is a participant in four Verizon-related plans: the Verizon Management Pension Plan (the "Pension Plan"), the Verizon Excess Pension Plan (the "Excess Pension Plan," Verizon's GTE Executive Retired Life Insurance Plan (the "Life Insurance Plan") and the Verizon Income Deferral Plan (the "Income Deferral Plan"). Plaintiff Boeri is a participant in the Pension Plan and the Excess Pension Plan.

Verizon is the sponsor of all plans, which are governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. Defendant Verizon Employee Benefits Committee ("VEBC") is the plan administrator of the Pension Plan, although Verizon has also sometimes been referred to as the plan administrator by Defendants. Verizon is the plan administrator of the Life Insurance Plan.

Wells Fargo and Company ("Wells Fargo") is or was the withholding agent for one or more of the plans.

Aon Corporation ("Aon") in 2010 acquired Hewitt Associates, Inc. ("Hewitt"), the administrative and record keeping agent for one or more of the plans. Hewitt has also sometimes been listed by Defendants as a plan administrator of one or more of the plans.

FMR LLC ("Fidelity") is either the plan administrator or claims administrator with respect to one or more of the plans.

Morgan Stanley Smith Barney LLC ("Morgan Stanley") is successor-in-interest to Solomon Smith Barney, which was the administrator of the GTE stock-options program, a predecessor Verizon-related plan in which Mr. Boeri participated.

John Does 1-25 are unknown plans, fiduciaries of the plans or service providers to the plans.

Neither Plaintiff ever worked nor resided in the United States, making their employment income and benefits from their retirement plans "foreign-source" benefits not subject to U.S. taxes. Sometimes, foreign-source employees must file a Form W-8BEN certifying they are not a U.S. Citizen and their income is "not effectively connected with the conduct of a trade or business in the United States." Form W-8BEN, Part IV, 3; *available at http://www.irs.gov/pub/irs-pdf/fw8ben.pdf.*

Nonetheless, in 1998 and 1999, Morgan Stanley's predecessor withheld approximately $94,202 from Boeri when he exercised options in GTE's (predecessor to Verizon) stock-option program. In 2000, Morgan Stanley's predecessor sent Boeri an Internal Revenue Service

("IRS") "Notice of Information Discrepancy." A few months later, Verizon sent a follow-up letter, explaining Morgan Stanley had "incorrectly reported stock-option exercises you have performed to the U.S. Internal Revenue Service." The mistake occurred, Verizon said, because Morgan Stanley's computers could not distinguish between the Verizon Global ID number and a U.S. Social Security Number. It promised to assign Boeri and others a new Global ID "to prevent this from reoccurring."

But Boeri never received a refund of the $94,202.00.

In 2004, both Plaintiffs retired. Before Boeri did so, he inquired about whether any U.S. taxes would be withheld from his benefits and Verizon "and/or" Aon's predecessor assured him nothing would be withheld as long as the proper form was on file before payment was issued. When Boeri elected his retirement benefits, he noted his foreign-source status, included a W-8BEN form and informed administrators he was not subject to U.S. taxes.

Nonetheless, Boeri's Pension Plan took out U.S. taxes, and the lump-sum he received from the Excess Pension Plan did too, amounting to a withholding of more than $50,000. The plans deducted taxes from Mejia as well.

Mejia attempted to rectify the situation by taking actions including the following:

- Writing a letter to Fidelity on February 28, 2008 complaining of "erroneous withholding" and noting his Form W-8BEN was on file. Fidelity refused to stop the withholding on the grounds that the U.S.

does not have a tax treaty with Panama, a misunderstanding of the tax laws, Plaintiffs say.

- Providing Fidelity with another Form W-8BEN on March 25, 2008 and again explaining, in writing, his tax-exempt status. Fidelity again cited the treaty issue and claimed the W-8BEN form was irrelevant to that issue. Fidelity further said it was acting in accordance with procedures established by Verizon.

- Writing to Fidelity again on April 17, 2008, explaining the error and imploring it to review the Internal Revenue Service Code and correct the problem. Fidelity again cited the treaty issue.

- Writing to Fidelity on May 12, 2008 and this time enclosing copies of the relevant Internal Revenue Service ("IRS") publications.

- Sending the same materials on May 17, 2008 to the Wells Fargo predecessor, the withholding agent. Wells Fargo demurred that it just provided ministerial services to Verizon and that it took its marching orders from Fidelity.

Finally, on July 24, 2009, Verizon Manager of Retiree Strategy & Administration Michael J. Thivierge ("Thivierge") wrote to Mejia and apologized for the confusion, explaining that the Verizon Benefits Center had not had his Form W-8BEN on file and mistakenly treated the benefits as if they had been earned inside the United State. Thivierge explained that Verizon tax attorneys had since reviewed the matter, ascertained that Verizon had the appropriate paperwork on file and promised that "Going forward, Mr. Mejia's monthly qualified pension and non-qualified deferred compensation payments will not be taxed." Verizon instructed Mejia to apply to the IRS for a refund for those years where the refund statute of

limitations had not yet run (there is a three-year limitation) and agreed to reimburse him for the taxes for which he could no longer apply for a refund.

Mejia got a partial reimbursement from Verizon for the taxes withheld in 2005 and applied to the IRS for subsequent years, receiving partial refunds (the Complaint does not say why he did not receive a complete refund).

Despite Verizon apparently admitting its mistake, it continued to withhold taxes from Mejia's Income Deferral Plan, and continues to do so.

Apparently concerned for others similarly situated, when Mejia received the good news, he wrote a letter on August 25, 2009, thanking Verizon but expressing concern for other Verizon retirees whose taxes were still being withheld. Verizon's Thivierge responded September 4, 2009, promising it would "be communicating directly with those impacted retirees."

Rather than any meaningful communication with those retirees, the Verizon Benefits Center, managed by Aon "and/or" Verizon sent a mass mailing on November 20, 2009 informing them that their Social Security numbers matched those of a deceased individual, and asked them to sign a notarized affidavit attesting that their Social Security numbers were, in fact, correct.

Of course, none of the retirees *has* a Social Security number, not being United States citizens. Plaintiffs interpret this mass

mailing as yet another instance of some of Defendants' computers confusing Verizon Global ID numbers with Social Security numbers – the same problem identified with Mr. Boeri in 2000 that Verizon promised to fix but apparently never did. Because the pre-printed affidavits contained retirees' Verizon Global ID number and asked (upon threat of suspension of benefit payments) retirees to swear it was their Social Security number, Plaintiffs claim this is evidence of fraud by Defendants.

Boeri faced a Kafkaesque nightmare similar to Mejia's. When he filed an ERISA complaint with the Verizon Claims Review Unit (the "VCRU") about the $50,000-plus deducted from his excess income lump-sum payments in 2004, the VCRU mistakenly told him he was not eligible for a tax exemption. Boeri believed them, and pursued the matter no further, until 2009, when he apparently learned of Mr. Mejia's limited success. He complained in writing to Verizon's Pension Department on September 16, 2009. Verizon Corporate Benefits personnel noted "it appears that his circumstances were identical to Mr. Mejia's" and at least 24.12 percent of his benefits should have been "exempt from U.S. taxes."

But Verizon was not as generous with Boeri, denying his claim on April 5, 2010, saying it had previously denied it in 2005 and would not now treat his renewed efforts as an appeal. The Complaint does not say if Verizon fixed Boeri's improper withholding issues.

Plaintiffs filed this class-action complaint on June 9, 2011 under ERISA.

It alleges aiding and abetting a breach of fiduciary duty against all Defendants (Count 5) and asks for an injunction against all Defendants that would prohibit them from future wrongful withholdings (Count 3). Count 1 is a claim for benefits against the four plans, arguing Plaintiffs are due the tax monies that were improperly withheld. Count 2 alleges breach of fiduciary duty against Verizon and the VEBC. Count 4 charges Verizon and the VEBC with co-fiduciary liability. Count 6 claims the VEBC and Verizon failed to furnish ERISA plan documents requested by Mejia. Counts 7 and 8 are claims in the alternative, filed in the event that any claims are construed not to be governed by ERISA. Count 7 alleges breach of contract and tortious interference with a contract. Count 8 alleges Breach of common law fiduciary duty and tortious interference with fiduciary duty.

## II.  LEGAL STANDARD

### A.  Motion to Dismiss

On a Motion to Dismiss, all of a Plaintiff's allegations are treated as true. FED. R. CIV. P. 12(b)(6); *Wigod v. Wells Fargo Bank, N.A.*, No. 11-1423, 2012 U.S. App. LEXIS 4714, at *2 (7th Cir. March 7, 2012). Complaints will survive a motion to dismiss if they contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## B. ERISA and 26 U.S.C. §§ 7421-7422

ERISA allows a beneficiary to institute a civil action to recover benefits due, to enforce rights under the terms of the plan and to clarify future benefits under the plan. 29 U.S.C. § 1132(a)(1)(B). The Act also makes fiduciaries of a plan "personally liable" for plan losses and subject to equitable or remedial relief, including removal. 29 U.S.C. 1109(a). Fiduciaries of a plan may also be held liable for a breach of fiduciary duty by another fiduciary if he knowingly participated in, concealed, or allowed the breach by the other fiduciary. 29 U.S.C. § 1105(a). Plan administrators must supply plan documents within thirty (30) days upon request or face statutory daily fines, payable to the requestor. 29 U.S.C. § 1132(c)(1).

However, where an issue has federal tax implications, the tax code comes into play. Specifically, 26 U.S.C. §§ 7421-7422 provides:

> § 7421. Prohibition of suits to restrain assessment or collection.
> (a) Tax. Except as provided in [selected sections], no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

(b) Liability of transferee or fiduciary.  No suit shall be maintained in any court for the purpose of restraining the assessment or collection (pursuant to the provisions of chapter 71) of —

> (1)   the amount of the liability, at law or in equity, of a transferee of property of a taxpayer in respect of any internal revenue tax, of
>
> (2)   the amount of the liability of a fiduciary under Section 3713(b) of title 31, United States Code in respect of any such tax.

§ 7422.  Civil actions for refund.
(a) No suit prior to filing claim for refund. No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

These sections have been interpreted to foreclose lawsuits against private parties who over-collect taxes on behalf of the federal government.  There is "a practical reason for the courts not to create such an action:  it would throw a monkey wrench into machinery designed to confine suits for the refund of federal taxes to suits in the federal courts against the government in order to protect its private as well as public agents from being whipsawed," explained Judge Richard Posner in *Kaucky v. Southwest Airlines Co.*, 109 F.3d 349, 353 (7th Cir. 1997).  Instead, the only route to the improperly withheld money is to file a claim with the government for refund.

In *Kaucky*, a passenger sued an airline for collecting an expired tax on airline tickets, but the district court dismissed for lack of jurisdiction under § 7422. Judge Posner outlined a spectrum of culpability. At the one end, where § 7422 would provide no refuge, a "con man" masquerades as a tax collector, pocketing the swindled funds. There is no protection because the private tax collector is not actually an agent of the government. At the other end is a legitimate tax collector who mistakenly collects and remits to the IRS a non-existent tax, and § 7422 forecloses suit against them, instead requiring a refund action against the IRS by the payor of the tax. Somewhere between, Posner hypothesized, could be a legitimate tax collector who, knowing the tax has expired, collects it in bad faith anyway and pockets the proceeds. For the "bad faith" collector, Judge Posner mused, "[w]e may assume *without having to decide* that the intermediate case should be assimilated to the imposter case rather than the overpayment case." *Id*. (emphasis added).

Later cases threw doubt on whether there was, in fact, such a route to suit for recovery of funds against a private, bad-faith defendant. Quoting § 7422, U.S. Supreme Court Chief Justice John Roberts noted the expansive nature of the language prohibiting "any" suit. "Five 'any's' in one sentence and it begins to seem Congress meant the statute to have expansive reach.'" *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 7 (2008).

- 11 -

Discussing the unfairness of having to pay a tax later found unconstitutional, the Court noted "the taxpayer *must* succumb to an unconstitutional tax, and seek recourse only after it has been unlawfully exacted." *Id*. at 10.

The Third Circuit found *Clintwood's* emphasis on a lack of discretion superseded *Kaucky*. "Instead of directing courts to characterize the nature of the tax collector – locating it on a spectrum from authorized agent acting in good faith, to once-authorized agent acting bad faith, to 'con man,' . . . we think § 7422 requires taxpayers to file claims with the IRS for tax refunds." *Umland v. Planco Fin. Servs., Inc.*, 542 F.3d 59, 68 (2008).

There is, however, somewhat more play in § 7421, the Anti-Injunction Act. Section "7422 . . . is written much more broadly than § 7421." *Clintwood*, 553 U.S. at 13. Courts may impose an injunction regarding tax collection practices, but "[o]nly if it is then apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim" to funds. *Id*. at 13-14, quoting *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 7 (1962). The other requirement of *Williams Packing* is that the taxpayer demonstrates that collection would cause him irreparable harm. *S. Carolina v. Regan*, 465 U.S. 367, 374 (quoting *Williams Packing*, 370 U.S. at 6-7).

- 12 -

The D.C. Circuit interpreted *Williams Packing* as "recognizing exception to Tax Anti-Injunction Act . . . where tax collector lacks 'good faith' claim to tax sought to be collected," *Nat. Trust for Hist. Pres.*, 995 F.2d 238, 240 (1993)(modified on other grounds in *Nat. Trust for Hist. Pres.*, 21 F.3d 469 (D.C. Cir. 1994).

Although Plaintiffs claim that the question of how §§ 7421-7422 relate to ERISA is one of first impression, this is not entirely accurate. True, these exact circumstances may not have arisen before, but the two statutes have previously been analyzed side by side.

In *Pittston Co. v. United States*, the Fourth Circuit affirmed a district court's decision that "§ 7422 was not preempted by the Employee Retirement Income Security Act." *Pittston*, 199 F.3d 694, 700, 704 (1999). That came in the context of an employer seeking a refund of its premium to a statutorily mandated fund governed by ERISA. In that case, because the premiums were construed as a tax, plaintiffs pursued a refund as a tax refund.

In *California v. Regan*, the Ninth Circuit overturned a District Court's decision finding jurisdiction in regards to California's attempt, as an employer, to be exempted from ERISA's requirement to file with the IRS annual information regarding employee pension benefit plans. *California*, 641 F.2d 721, 723 (1981). The United States argued such relief was prohibited by a lack of jurisdiction under § 7421 (the Anti-Injunction Act) and 28

U.S.C. § 2201 (The Declaratory Judgment Act, which allows courts to issue declaratory judgment "except with respect to Federal taxes.") The Ninth Circuit agreed, remanded to the district court with instructions to dismiss for lack of jurisdiction, noting that the filing requirement "will have an impact on the assessment of federal taxes." *Id.* The court also noted the Supreme Court's finding that "[t]he federal tax exception to the Declaratory Judgment Act is 'at least as broad as the Anti-Injunction Act.'" *Id.* (quoting *Bob Jones University v. Simon*, 416 U.S. 725, 733 n.7 (1974).

In *McCarthy v. Marshall*, an ERISA fund administrator's challenge of a Department of Labor regulation was dismissed for lack of jurisdiction. Despite ERISA explicitly allowing for such challenges, the action was dismissed because the challenge carried substantial tax implications and thus § 7421 controlled. *McCarthy*, 723 F.2d 1034, 1037, 1038 (1st Cir. 1983).

There are several others, but a very instructive case is the unpublished *Blossom v. Bank of N.H.*, where plaintiff beneficiary sued defendant bank under ERISA, seeking revocation of his assignment of benefits under an ERISA plan. *Blossom*, No. 02-573-JD, 2003 U.S. Dist. LEXIS 24182 (D.N.H. Dec. 29, 2003). The bank joined the United States as a necessary party, because the IRS had attached a levy to the plan benefits to satisfy back taxes. Adjudicating the plaintiff's claim would mean "the court would

necessarily [have to] consider the tax levy and the assessment of back taxes against Blossom.  Blossom or the Bank would be entitled to the payments only to the extent the court determined that the government was not entitled to a tax levy.  Blossom and the Bank have not suggested that the government could not prevail on the merits of the tax issue." *Id*. at *3-4.  For that reason, dismissal was proper for lack of jurisdiction.  *Id*.

### III.  ANALYSIS

### A.  26 U.S.C. § 7422

The Court concludes that all of the monetary damages sought in this case are actually the Plaintiffs' attempts to seek a tax refund from the Defendants.  Literally this may not be true (Plaintiffs seek "ERISA benefits" and damages for breach of fiduciary and non-fiduciary duties under ERISA and monies expended pursuing tax refunds), but "we do not think the literal sense is the right sense.  If it were, then anytime a taxpayer thought he could prove that his employer had erroneously withheld a portion of his salary for federal income tax he would have an action in state court against the employer." *Kaucky*, 109 F.3d at 351.

The situation is slightly different here in the ERISA context, and Plaintiffs argue that this context and the added "fiduciary duty" under ERISA makes all the difference and provides an exception.  Plaintiffs' authority for that contention are ERISA statutes and *Kaucky*.

- 15 -

The Court discounts Plaintiffs' citation to ERISA law because, as evidenced by *Pittston* and the multiple cases cited above, several different circuits have concluded that 26 U.S.C. § 7421-7422 is not pre-empted by ERISA.

Plaintiffs also try to hang their hat on an exception they see in *Kaucky*, comparing Defendants' actions with the hypothetical legitimate tax collector of *Kaucky* who turns crooked and deliberately pockets a non-existent tax.

There are multiple problems with this comparison, the first being that Plaintiffs *never* alleged in their Complaint that Defendants pocketed any of the taxes at issue. Indeed, they admit that Mejia was able to recover some of the collected taxes from the IRS. The Complaint did not allege that the failure to collect all the withheld amounts from the IRS was due to Defendants' wrongfully pocketing them. Plaintiffs do adequately charge recklessness, providing ample allegations that even after Verizon *de facto* admitted to Plaintiff Mejia its mistake in regards to all foreign-sourced beneficiaries, it continued to wrongfully withhold taxes from him. Recklessness is yet another level of culpability, but was not dealt with in *Kaucky*.

Even if bad faith or theft had been alleged (and Plaintiff seems to argue that the mailing requesting the false Social Security affidavit was somehow part of this scheme), the Court does not read *Kaucky* as being as definitive as Plaintiffs urge. Judge

Posner explicitly said that he was "assume[ing] without having to decide" that such bad faith would evade § 7422's reach. This quoted portion alone indicates it was *dicta*. Further, the hypothetical was posed by Judge Posner for the purpose of showing that Kaucky, the plaintiff, had not alleged bad faith activity, and that the only remedy for Kaucky was a claim or suit for a refund against the government.

The Court is not sure the Social Security affidavit issue propels this to a bad faith status, but even if it does, the subsequent *Clintwood* case casts serious doubt on whether the Supreme Court shares the view that bad faith can provide a route around § 7422.

The Court is aware of the perverse implications of this all-powerful statute. A vengeful employer upset with his employee might very well withhold 100 percent of the employee's paycheck as federal taxes and do so without any financial repercussions for the employer. Judge Wald of the D.C. Circuit ruminated that a similar statute regarding federal receivership might legitimize a similar parade of horribles, but nonetheless found the "counter-intuitive" preclusion of suit the correct outcome in light of the plain meaning of the statute and the absence of any alternative remedy. *Nat. Trust for Hist. Pres. v. FDIC*, 21 F.3d at 472. In short, it appears that Congress wanted employers (and other tax-collection agents) to be more afraid of the IRS than lawsuits from employees,

- 17 -

and it gave them broad protection in the form of § 7422 to effect seamless tax collection. "Congress, of course, can change this state of affairs should it so choose." *Id.*

The Court finds that all of Plaintiffs' damages, missed benefits, expenses and requested surcharges are tax refunds in disguise, because they are all premised on Defendants improperly withholding taxes. However, one particular argument deserves some elaboration.

Plaintiffs alleged in their Complaint that Verizon became aware of its improper withholding, admitted this to Mejia and promised to address it with other beneficiaries but then did not.

They contend once Verizon admitted in writing to Plaintiffs that it believed it had been wrong to withhold taxes, it was bound by fiduciary duty to inform similar plan participants they might be due a refund from the government. Plaintiffs argue there is a duty "to deal fairly and honestly with beneficiaries." *Varity Corp. v. Howe*, 516 U.S. 489 (1996). They contend silence alone can be misleading and breach a fiduciary duty. *Adamczyk v. Lever Bros. Co.,* 991 F.Supp. 931, 939 (N.D. Ill. 1997).

There is ground for this in the Seventh Circuit. "Fiduciaries must . . . communicate material facts affecting the interests of beneficiaries." *Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 991 (7th Cir. 1993). The Court finds this is a solid argument for fiduciary breach, but as far as damages are concerned,

is foreclosed by the tax code. However, some injunctive relief in this area may not run afoul of the tax code, as will be addressed in the next section.

Because the Court believes that § 7422 is rather absolute in its prohibition on seeking tax refunds from private tax collectors, and there is no form of repleading that could evade § 7422, to the extent Plaintiffs seek any monetary damages stemming from the proper or improper withholding of taxes, the Complaint is dismissed with prejudice.

## B.  26 U.S.C. § 7421

As previously noted, there is more wiggle room with § 7421, the Anti-Injunctin Act. Before addressing that statute, however, the Court notes that Plaintiffs contend the requested relief they seek "clarifying" the ERISA duties of the Defendants would not run afoul of § 7421 because it would not constitute an injunction. The Court doubts that, but need not reach the question, because such a "clarification" by the court would unquestionably be a declaratory judgment regarding what taxes are and are not legally capable of being withheld, and the federal tax exemption to the Declaratory Judgment Act, 28 U.S.C. § 2201, forecloses this relief unless a narrow exception is met.

This exception to § 7421, and 28 U.S.C. § 2201, is very specific. Plaintiff's Complaint, taken in the light most favorable to it, adequately alleges the first necessary component of this

exception: that the federal government could not conceivably prevail in a refund action on the taxes that have been or are being withheld from Plaintiffs. Plaintiffs do not explicitly allege this, but it is a reasonable implication, given that they have pled that Verizon essentially admitted in writing the withholdings were incorrect and then blithely continued them in regards to Plaintiff Mejia and failed to inform other similar-situated beneficiaries of its error or how such beneficiaries could go about recovering their money from the government.

This begs the question of whether Verizon's alleged admission of wrongful tax collection constitutes an admission by the other defendants, or whether it can also be considered the government's position. It also begs the question of whether the United States is a necessary party in this matter to answer such a question. The Court doubts the United States would agree that a private tax collector's interpretation of the tax law binds it in any way. But again, we need not determine these issues now because Plaintiffs have failed to allege another needed component to the § 7421 exception, irreparable harm. *S. Carolina v. Regan*, 465 U.S. 367, 374 (quoting *Williams Packing*, 370 U.S. at 6-7).

Because Plaintiffs have not alleged irreparable harm, to the extent their Complaint seeks declaratory judgment or injunctive relief that could affect the collection of taxes, the Complaint is dismissed without prejudice. As noted above, the Court has not

- 20 -

addressed whether the U.S. Government would be a necessary party to any such action. However, if Plaintiffs refile such allegations, they are instructed to serve a copy on the U.S. Attorney's Office for the Northern District of Illinois and notify it that this Court seeks its input on the issue of whether it is a necessary party to this action under Federal Rule of Civil Procedure 19.

The Court finds that almost all of Plaintiff's requested relief would be declaratory judgments or injunctions affecting the collection of taxes. For example, removal of the fiduciaries would implicitly serve as an admonition to the replacement fiduciaries that the former regime had incorrectly collected taxes and that they should not repeat the same mistake.

Other forms of relief would either similarly direct new tax collection practices or run afoul of the standing requirement that an injury must be capable of redress by a favorable court ruling. *Bond v. Utreras*, 585 F.3d 1061, 1072-1073 (7th Cir. 2009). An audit, for instance, must necessarily either direct future tax withholding practices or be purely advisory, which would not redress the alleged injury.

Because it may be possible for Plaintiffs to replead in a manner that meets the narrow injunction exception, the portion of the Complaint seeking injunctive or declaratory relief that would affect tax collection is dismissed without prejudice.

### C. Allegations Not Seeking a Tax Refund or a Declaratory Order/Injunction Affecting Tax Collection

There are two narrow fact scenarios alleged by Plaintiffs that do not seek the *de facto* return of paid taxes or an injunction or declaratory judgment affecting tax collection.

The first is Plaintiff's Count 6, alleging Defendants VEBC and Verizon failed to supply requested plan documents to Mejia as required under ERISA. Supplying these documents would neither constitute a tax refund, nor would inhibit tax collection, so §§ 7421-7422 do not apply. However, Defendants quibble that Plaintiffs cited the wrong section of the statute. Plaintiffs did not respond to this argument, so it is conceded. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). However, this is a very correctable oversight, and therefore the Count is dismissed without prejudice.

Second is the aforementioned injunctive relief in regards to notification of plan participants that Verizon itself believes they may be due a tax refund and informing them how to go about seeking one. Such injunctive relief would in no way impede the collection of taxes by the federal government. It merely would serve to bring similarly situated plan participants out of the dark on what, allegedly, is a mistake that Verizon itself believes it has made. Beneficiaries would then be free to pursue or not pursue a refund action directly with the government.

However, in regards to this *notification* issue, the Complaint never says how or if Plaintiffs were damaged by this. There is, admittedly, a hint at it when Plaintiffs seek "an order requiring Defendants to notify the class members of the procedures by which they might be able to obtain redress, including but not limited to the IRS refund procedures." Pl.'s Compl. 25. But this only hints at the money withheld, which presumably resulted from the wrongful withholding, not the failure to notify. Plaintiffs do not, for example, allege that the failure to notify prevented Plaintiffs from recovering their wrongfully withheld taxes due to statute of limitations issues. That allegation only comes in Plaintiff's response. Pl.'s Resp. 14.

Where no damages are alleged, a cause of action must be dismissed. *Bd. of Trs. of the N.J. Carpenters Annuity and Pension Funds v. Bank of New York Mellon*, et al., No. 11-Civ.-1555, 2011 U.S. Dist LEXIS 120190, at *15 (dismissing plaintiffs ERISA claims and state fiduciary duty claims for failing to sufficiently allege damages beyond conclusory terms). Therefore, to the extent Count 3 is based on the notification breach of fiduciary duty, it is dismissed without prejudice.

Similarly, if Plaintiffs replead, they would do well to explain what damages were caused by the November 20, 2009 letter asking beneficiaries to attest a company ID number was their Social

Security number. It seems to be a centerpiece of the Complaint, but the Court is at a loss as to its significance.

### D. Counts 7 & 8

Plaintiffs filed Counts 7 and 8 as counts-in-the-alternative in the event that their Complaint was construed as dealing with non-ERISA matters. Both sides agree ERISA governs, so these Counts are dismissed with prejudice.

### E. Counts Against Aon/Hewitt

As a preliminary matter, Defendant Aon seeks dismissal of Counts 2 and 4 against it, but Plaintiff's Complaint makes clear that these counts are only "Against the VEBC and Verizon," and so the Court does not consider Plaintiffs to have alleged Counts 2 and 4 against Aon. Therefore, with respect to Counts 2 and 4, Aon's Motion is denied as moot because these allegations are not pending against Aon.

To clear up another preliminary matter, Plaintiffs have clarified they do not allege Aon is a fiduciary, so to the extent Counts 3 and 5 allege any fiduciary breach by Aon, the Motion to Dismiss is granted as to Aon.

What remains, then, is Count 3 seeking equitable relief against Aon and Count 5 alleging aiding and abetting breach of fiduciary duty.

First, Aon contends that the equitable relief sought in Count 3 (under ERISA § 502(a)(3); 29 U.S.C. § 1132(a)(3) – the

"catch all" relief subsection) is not available because it is redundant of relief requested under ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)). Aon cites *Mondry v. Am. Family Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009). Aon's own case defeats its argument. In that case, the court granted monetary relief under § 1132(a)(3) because it was extra-contractual damages not provided for under § 1132(a)(1)(B). Likewise, here, Plaintiffs request equitable relief such as an order directing those involved with the plans to notify participants of an erroneous withholding and supplying directions on how to pursue recovery of those funds. That relief is outside the scope of § 1132(a)(1)(B). Additionally, the breach upon which it is premised (failure to *notify* participants of an erroneous withholding) is different than the circumstances under which Plaintiffs seek § 1132(a)(1)(B) relief (improper withholding).

Next, Aon contends the Count 5 allegations in the Complaint, at least with respect to Aon, are too skeletal to survive a Motion to Dismiss.

Liability of a non-fiduciary for aiding a fiduciary breach "require[s] more than innocent but careless errors on the part of the non-fiduciary defendant." *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 542 (7th Cir. 1991). Alleging such liability also requires (1) alleging a fiduciary breach in the first instance and (2) alleging that the non-fiduciary *knowingly* participated in that

prohibited conduct. *Daniels v. Bursey*, 313 F.Supp.2d 790, 808 (N.D. Ill. 2004).

The Court confesses that, like Defendants, it had a hard time sussing out which acts in the Complaint Plaintiffs believe are breaches of fiduciary duty and which are not. It gleaned that the improper withholding was one and the failure to notify of the improper withholding was another, and evaluates Aon's liability with respect to those two acts. If Plaintiffs meant to allege other acts constituted fiduciary breaches (as they do in their response) they would do well, if they replead, to make that clear in their Complaint.

Plaintiffs maintain the law of this District instructs that non-fiduciaries need not know that certain conduct violates a fiduciary duty, only that they know of it or facilitate it. Aon contends even if this is the case, Plaintiffs didn't allege Aon/Hewitt knew of these acts.

Again, more clarity in the Complaint would be desirable, but the Court does not rule on whether such pleading was sufficient because it disagrees with Plaintiffs' legal conclusion that the non-fiduciary need not know the conduct violates a fiduciary duty.

Plaintiffs cite two cases for this proposition. *Daniels v. Bursey*, 313 F.Supp.2d 790, 809 (N.D. Ill. 2004) and *Neil v. Zell*, 753 F.Supp.2d 724, 731 (N.D. Ill. November 9, 2010). The Court agrees that the latter is inapposite because it was actually

evaluating a *fiduciary's* culpability. It further agrees with Defendants that the former decision came before *Iqbal*, and the conclusory language that sufficed then (that the non-fiduciary mismanaged the plan) would not suffice now.

More persuasive to the Court are Aon's cited cases for the proposition that distinct knowledge of a breach is required. *See, e.g.*, *In re Bausch & Lomb, Inc. ERISA Litig.*, No. 06-CV-6297, 2008 WL 5234281, at *12 (W.D.N.Y. Dec. 12, 2008). This is buttressed by the fact that, where co-fiduciaries are concerned, "liability for failure to take reasonable steps to remedy a breach requires more than mere knowledge of a cofiduciary's act or omission; it requires actual knowledge that it is a breach." PETER J. WIEDENBECK, ERISA: PRINCIPLES OF EMPLOYEE BENEFIT LAW, 118 n.40 (Oxford University Press 2010). It is inconceivable that a non-fiduciary would be held to a higher standard than a fiduciary.

Defendant Aon advanced this argument, but it applies to the other non-fiduciary Defendants as well. Therefore, Count 5 is dismissed without prejudice as to all defendants on these grounds as well.

### IV. <u>CONCLUSION</u>

For the reasons stated herein, the Motions to Dismiss are granted in part and denied in part as follows:

1. Counts 1-5: To the extent the counts seek to recoup benefits from the plans, they are dismissed with prejudice. To the

extent they seek injunctive relief or declaratory judgment, they are dismissed without prejudice.

2.    Count 6 (against VEBC and Verizon):  The Count is dismissed without prejudice.

3.    Counts 7 & 8 (against all Defendants):  The Motions to Dismiss with prejudice are granted.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 5/2/2012